UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSEPH LEE BENSON,

                Plaintiff,

v.                                                  Case No. 23-cv-1218-pp

NATHAN DANTZLER
and MARSALAS DAVIS,

                Defendants.

---

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 24) AND DISMISSING CASE WITHOUT PREJUDICE**

---

      Plaintiff Joesph Lee Benson, who is incarcerated and representing himself, is proceeding under 42 U.S.C. §1983 on claims against officials at the Milwaukee County Jail. The defendants have moved for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before filing his complaint. Dkt. No. 24. The plaintiff has not opposed the motion. The plaintiff failed to exhaust his administrative remedies, so the court will grant the defendants' unopposed motion and dismiss the case without prejudice.

**I.    Facts**

      A.    <u>Procedural Background</u>

      On September 13, 2023, the court received the plaintiff's complaint asserting claims against known and unknown officials at the Milwaukee County Jail. Dkt. No. 1. The court screened the complaint and determined that

it did not name a proper defendant. Dkt. No. 7 at 6–7. The court gave the plaintiff "an opportunity to amend his complaint to correct the deficiencies the court has noted and to better explain his claims." Id. at 7. On November 20, 2023, the court received the plaintiff's amended complaint. Dkt. No. 8. It screened the amended complaint and allowed the plaintiff to proceed on a claim against "the John Doe deputy with whom the plaintiff spoke at around 1:00 to 2:00 a.m. on February 8, 2023, and who the plaintiff says told him that he would 'look into' the plaintiff's medical restriction" for a lower bunk and lower-tier cell. Dkt. No. 9 at 10. The court added Milwaukee County Sheriff Denita R. Ball as a defendant for the limited purpose of helping the plaintiff identify the name of the Doe defendant. Id. at 11. The court dismissed all other defendants and claims. Id. at 6–10.

On March 13, 2024, the court received from the plaintiff a motion to substitute Nathan Dantzler and Marsalas Davis in place of the John Doe placeholder. Dkt. No. 16. The court granted that motion and dismissed Sheriff Ball as a defendant. Dkt. No. 17. It then issued a scheduling order setting deadlines for the defendants to move for summary judgment on exhaustion grounds (July 22, 2024), and for the parties to complete discovery and file dispositive motions on the merits. Dkt. No. 23. The court reminded the plaintiff "that it [was] his responsibility to promptly notify the court if he [was] released from custody or transferred to a different institution." Id. at ¶4. On May 23, 2024, the court's staff discovered that the plaintiff had been released from custody. Because the plaintiff had not so informed the court or provided a new

address, the court's staff contacted the plaintiff's probation officer, who said that correspondence for the plaintiff could be mailed to the probation officer at "c/o Wisconsin Probation and Parole 613 N. 36th St., Lower Level #103 Milwaukee, WI 53208." Dkt. Annotation of May 23, 2024. The court updated the docket accordingly. The plaintiff himself has not filed a notice of his change of address and the court has heard nothing from the plaintiff since March 13, 2024, which it received his March 10, 2024 request to substitute the proper names of the Doe defendants.

On July 19, 2024, the defendants filed their motion for summary judgment on exhaustion grounds. Dkt. No. 24. They certified that they had served that motion and supporting materials on the plaintiff by mailing them to the plaintiff at the address his probation officer had provided. Dkt. No. 28. On July 23, 2024, the court ordered the plaintiff to file his response materials to the defendants' motion in time for the court to receive them by August 19, 2024. Dkt. No. 29. The court advised the plaintiff that if it did not receive his response materials by the August 19, 2024 deadline, "the court has the authority to treat the defendants' motion as unopposed, accept all facts the defendants assert as undisputed and decide the motion based only on the arguments in the defendants' brief, without any input from the plaintiff. That means the court likely will grant the defendants' motion and dismiss the case." Id. at 2. The court sent that order to the address the plaintiff's probation officer had provided. Id. The court also granted the defendants' motion to stay all

other deadlines pending the court's decision on their motion for summary judgment on exhaustion grounds. Dkt. No. 30.

The August 19, 2024 deadline has passed, and the plaintiff has not responded to the defendants' motion or disputed the defendants' proposed findings of fact. As stated earlier, the court has not heard from the plaintiff since March 13, 2024, when it received his motion identifying the defendants. None of the court's orders sent to the plaintiff at the address provided by his probation officer have been returned to the court as undeliverable, and the court has no reason to believe he did not receive them. Consistent with the previous order, the court considers the defendants' proposed findings of fact undisputed for purposes of this decision.

B. Factual Background

The plaintiff was at the Milwaukee County Jail temporarily, from February 8 to 14, 2023, pending sentencing for a state court criminal case. Dkt. No. 25 at ¶2. Defendants Dantzler and Davis are employees of the Milwaukee County Sheriff's Office and were assigned to work at the jail in February 2023. Id. at ¶7.

The defendants submitted an affidavit from Milwaukee County Sheriff's Office Corrections Lieutenant John Dingman. Dkt. No. 26. Dingman avers that he investigates and responds to all grievances filed by incarcerated persons at the jail. Id. at ¶3. Dingman explains that persons incarcerated at the jail may file formal complaints to jail administration about jail staff or any issue related to the incarcerated person's health, welfare, facility operation and other

4

matters. Id. at ¶16. The incarcerated person may file a grievance by following the jail's grievance procedure, which is detailed in the Occupant Handbook. Id. at ¶¶16–17; Dkt. No. 26-4. Dingman explains that the handbook is uploaded to the jail's electronic kiosk system, which is available to all incarcerated persons in the dayroom of their housing units—including the unit where the plaintiff was housed in February 2023. Dkt. No. 26 at ¶¶17, 19. It also is available on tablets that the jail assigns to each incarcerated person when they arrive at the jail. Id. at ¶20.

Every time an incarcerated person accesses the kiosk system, he must acknowledge receipt of the handbook. Id. at ¶18. Similarly, every time an incarcerated person logs into his assigned tablet, he receives a message about the rules for using the tablet; the message includes a link to the handbook. Id. at ¶22. The user of the tablet must acknowledge receipt of both the rules for tablet usage and the link to the updated handbook before the tablet allows him to proceed. Id. Dingman avers that in February 2023, the jail also explained the grievance process in detail through a video that played on a continuous loop in the jail's booking room. Id. at ¶23.

Persons incarcerated at the jail may submit grievances, grievance appeals and final appeals by using the electronic kiosks on their housing unit. Id. at ¶24. The incarcerated person signs into his "occupant account," where he can review responses to grievances or submit a new grievance. Id. at ¶25. Incarcerated persons may not submit grievances on their tablets; the tablet allows them only to review the handbook. Id. at ¶26. The handbook advises

incarcerated persons that they may request assistance from jail staff if they have difficulty submitting a grievance through the kiosk. Id. at ¶27.

When an incarcerated person submits a grievance through the kiosk, it automatically is assigned a number that cannot be removed or deleted from the system. Id. at ¶28. Jail staff review the grievance and assign it to a floor supervisor, who reviews and responds to the grievance. Id. at ¶29. The Special Projects Unit supervisor reviews that response to ensure that it is appropriate to address the grievance. Id. Once the supervisor approves the response, it becomes available for the incarcerated person to view through the kiosk. Id. If the incarcerated person is dissatisfied with the response, he may file an appeal. Id. at ¶30. A shift commander reviews the appeal and enters his response into the grievance system, which the Special Projects Unit supervisor again reviews and approves. Id. Once approved, the response becomes available to view through the kiosk. Id. The incarcerated person can appeal once more to the Jail Commander, whose response is final and cannot be appealed. Id. at ¶32.

Attached to Dingman's declaration is a copy of the handbook that was available to persons incarcerated at the jail in February 2023. Dkt. No. 26-4 at 3. This version of the handbook was updated in January 2023, and it provides the following information about the grievance process:

Grievance procedure:

1. Complete grievance in the Kiosk. If you need help, ask the officer, or request the assistance of an advocate.

2. The grievance will be reviewed and answered by a Jail Representative.

> 3. If you are dissatisfied with the result, you may appeal the decision by writing supporting documentation including full names of witnesses. The appealing Jail Representative will review and rule on your appeal.
>
> 4. Once the appealing representative has ruled, and more evidence is available[,] you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the new-found information/evidence. This decision/action is final.

Id. The handbook states that incarcerated persons must file grievances "within 14 days of the complaint or issue." Id. The incarcerated person must file an appeal within three days of receiving a response from jail staff. Id. Dingman avers that this version of the handbook was uploaded to the jail's kiosk and accessible to all jail occupants on the kiosk in the dayroom of their housing units in February 2023. Dkt. No. 26 at ¶35.

Dingman avers that if the kiosk is not available, incarcerated persons still may file grievances and appeals by requesting and completing a handwritten paper form and submitting it to jail staff. Id. at ¶33. A Special Projects Unit member will enter the paper grievance into the electronic system, where it is assigned a number and cannot be removed or deleted from the system. Id. Jail staff provide the incarcerated person paper copies of any responses if the incarcerated person submitted a written grievance and does not have access to the kiosk. Id. at ¶34. If an incarcerated person is released from the jail and no longer has access to the kiosk, jail staff will print and deliver responses to a grievance or appeal via U.S. mail. Id.

Dingman avers that between February 9 and 14, 2023, the plaintiff accessed his tablet nineteen times. Id. at ¶37. Prior to each of those uses, the plaintiff was required to acknowledge that he read and understood the handbook and the jail's rules for using the tablet. Id. Attached to Dingman's affidavit is a log showing each day and time that the plaintiff accessed his tablet and acknowledged receiving the rules and handbook. Dkt. No. 26-5. Dingman also notes that the plaintiff previously was housed at the jail from September 1 to December 7, 2022. Dkt. No. 26 at ¶¶9, 38. Dingman avers that during that time, the plaintiff submitted ten requests for information through the kiosk. Id. at ¶40. Each time, he had to acknowledge that he read the handbook and understood its contents. Id. The defendants attached a copy of the plaintiff's requests submitted during his previous incarceration at the jail. Dkt. No. 26-6. They also attached the versions of the handbook that were available on the kiosk during those months. Dkt. No. 26-7. Dingman explains that the administrative process for grievances from incarcerated persons was the same from September to December 2022 as it was in February 2023, and he avers that it was available to incarcerated persons through the kiosk and the video played in the booking area during both times. Dkt. No. 26 at ¶¶39, 41.

Dingman avers that in February 2023, the jail's grievance procedure "was always in full operation," and that the plaintiff "had access to this procedure, as well as the Kiosk." Id. at ¶43. Dingman avers that he has reviewed the electronic kiosk database, which stores all grievances, responses

and appeals. Id. at ¶44. He avers that he found no grievances in the database from the plaintiff submitted at any time in February 2023. Id. at ¶46.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if he or she shows that there is no genuine dispute as to any material fact and that he or she is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

### B. Exhaustion

Under the Prison Litigation Reform Act, an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an incarcerated person must "properly

9

Case 2:23-cv-01218-PP   Filed 08/30/24   Page 9 of 14   Document 31

take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement applies to all suits filed by incarcerated persons "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects incarcerated persons to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93). "Exhaustion requires a prisoner to 'take each of the steps prescribed by the state's administrative rules governing prison grievances.'" Williams v. Rajoli, 44 F.4th 1041, 1045 (7th Cir. 2022) (quoting Chambers v. Sood, 956 F.3d 979, 983 (7th Cir. 2020)). That means if the plaintiff failed to complete *any step* in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. See Perez v. Wis. Dep't of Corrs., 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). If the defendants satisfy that burden, the court must dismiss the unexhausted claims and defendants without prejudice. See Ford v. Johnson, 362 F.3d 395,

401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

    C.    <u>Analysis</u>

The undisputed evidence shows that the plaintiff never began the grievance process, much less exhausted it, for any claim related to his incarceration at the jail in February 2023. The undisputed evidence shows that the jail gave all incarcerated persons access to its grievance procedure through a video played during booking, through kiosks stationed in every housing unit and on tablets assigned to each person who was incarcerated at the jail. Both the tablet and kiosk required the incarcerated person to acknowledge that he had access to the jail rules and the Occupant Handbook, which contains the grievance procedure. The undisputed evidence shows that the jail's grievance procedure was fully operational and available to the plaintiff to use. The undisputed evidence shows that the plaintiff received a tablet in February 2023, which he accessed nineteen times while he was at the jail that month. The plaintiff showed that he understood how to use the kiosk because he requested information through the kiosk ten times during his previous incarceration at the jail from September to December 2022.

The undisputed evidence shows that despite the plaintiff having access to and using his tablet and the kiosk during his incarceration at the jail, he did not submit any grievances in February 2023. There is no evidence that he told any jail staff about his concern with his medical restriction on or after February 8, 2023, or at any time during his incarceration in February 2023.

The undisputed facts also show that after the plaintiff was transferred out of the jail, jail staff would have mailed him any response to his grievance or appeals to allow him to complete the jail's administrative process before bringing this complaint. The plaintiff's failure to notify jail staff about his concerns and to complete the jail's available grievance procedure constitutes a failure to exhaust his administrative remedies regarding his claim that defendants Dantzler and Davis disregarded his medical restriction on February 8, 2023. See Williams, 44 F.4th at 1045; Perez, 182 F.3d at 535.

The defendants have satisfied their burden to show the plaintiff failed to exhaust his administrative remedies before bringing his federal complaint. Because the plaintiff did not exhaust, the court must dismiss the case without prejudice for the plaintiff's failure to comply with §1997e(a). See Ford, 362 F.3d at 401.[1]

## III. Conclusion

The court **GRANTS** the defendant's unopposed motion for summary judgment on exhaustion grounds. Dkt. No. 24

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by

---

[1] Because the plaintiff did not comply with the court's order and has not disputed the defendants' proposed facts, there is "no reason to conduct an evidentiary hearing" under Pavey, 544 F.3d 739. Aguirre v. Witek, Case No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (quoting Doss v. Gilkey, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009)).

filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff a "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and

determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of August, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**